BOORAEM and others *vs.* WELLS and others.

1. Where the answer of one of several defendants objects to a bill for want of proper parties, and the controversy as to that defendant is settled before the final hearing. the objection will be disregarded.

2. If executors are alleged to have sold lands to two different persons, at different times, without any connection in the transaction, it is no valid objection to a bill to set aside the sale to one of them, that the other vendee is not made a party. It would be multifariousness to blend the two matters in one suit.

3. In a suit to set aside a conveyance to a trustee to hold in trust for one person for her life,,and at her death to such of her children as she may appoint, such children as the *cestui que trust* may have, are not necessary parties, their interest is too uncertain and contingent.

4. If a will direct executors to sell a certain tract, after the death of a certain legatee, and contain no other power of sale, a sale in the lifetime of such legatee is void.

5. A direction to rent out the house and lands devised for the use of a legatee during his life, and to make such other arrangement as the executors might deem expedient for his support on the same, does not, by implication, give the executors power to sell.

6. Upon a hearing on bill and answer only, the statements in the answer must be taken as true, without regard to their improbability.

7. An auction sale by executors, and a conveyance in execution of it, on which no money is paid, but made to carry out an arrangement in itself unlawful, will be set aside. and a conveyance without consideration to third parties to carry out that illegal arrangement, will be set aside.

8. If a *bona fide* purchaser obtains title through one who buys at a sale by a trustee or executor, so conducted as to be voidable by the *cestuis que trust*, and has no notice of the facts which constitute the illegality, his title will not be set aside, although in the deed through which he claims, it appears that another tract was by it illegally conveyed.

This cause was heard upon bill and answer.

*Mr. C. Parker*, for complainants.

Complainants sue to set aside a sale of land made by the surviving executrix of A. Beach, deceased, whose legatees they are as to one-fourth his estate, to recover their share

of personalty, to annul letters granted to the executrix, and appoint a trustee to carry out the will. They urge—

1. The sale was void. The power given by the will to the executors was only to be executed after the death of his son Evert. The last codicil in nowise changes the originally granted power. Power of sale must be clear.

Power of sale can only be executed at the time, and in the manner prescribed by the testator. 4 *Kent's Com.* 333, *and note,* 334; *Co. Lit.* 113; *Cox* v. *Day,* 13 *East.* 118; *Wright* v. *Wakeford,* 17 *Ves.* 454; *Blacklow* v. *Laws,* 2 *Hare* 40; *Champlin* v. *Haight,* 7 *Hill* 245; *Richardson* v. *Sharpe,* 29 *Barb.* 222.

Though the want of power extended only to the northeast portion of the farm, the sale of the other part is likewise void. All was sold at one bid, and for one price. The matter is indivisible.

2. The sale was void. It was no sale. The trustee really bought. It was, in fact, a conveyance by the then sole trustee, of one part for the use of her daughter, the other for her own use.

A trustee cannot buy for himself, directly or by any shift. The *cestui que trust* may always interfere. *Scott* v. *Gamble,* 1 *Stockt.* 218–236; *Mulford* v. *Bowen, Ibid.* 797; *Davoue* v. *Fanning,* 2 *Johns. Ch. R.* 252; *Michoud* v. *Girod,* 4 *How.* 552; *Ex parte Bennett,* 10 *Ves.* 381, (Sumner's ed.,) and cases cited in note.

3. The sale is void for irregularity amounting to fraud. Competition cut off, with consent of Wells and wife, by making sale subject to the provisions of the will respecting Evert.

Such a condition could not be lawfully imposed. It was a part of the trust to manage the farm for the support of Evert, and as to surplus, for legatees. The executrix could not shift the duty.

4. The circumstances show actual fraud—that is, as regards these complainants.

By a combination of the other parties in interest, they

just made a new will, and carried out a plan by which all got their shares, except the complainants. It was a clear combination to defraud the Lyells.

If the case is not one of oppression and tyranny, it certainly illustrates the greatest forgetfulness of the rights of others—relatives of all, beneficiaries of the trustee.

The testator was wise. He left two hundred acres, with a house, to support one imbecile man. The executors accepted that trust. He saw it was more than enough. He said, manage, cultivate, keep in order, and invest surplus; then, at Evert's death, sell and divide. Had the executors done this, what a difference to these legatees. Instead of this they try to devolve their duty on another, sell the land for what will be given for it clogged with this condition, divide the proceeds among their confederates, and let the Lyells go.

A proper decree, were the bill so filed, would be to estimate what would be the value of this farm, had they done their duty, and made them pay one-fourth to the Lyell branch.

5. The sale should be set aside, a new trustee appointed to execute the will, a new sale had of the northwest part, and accounts should be taken of the value of the southeast part, and one-fourth be paid the Lyell branch.

6. Mrs. Wells has no equity against such a decree. She is no *bona fide* purchaser without notice. She was privy to our rights and wrongs, and shared all risk the Lawrences took. Even were she not, she had notice—constructive and actual.

If the sale and purchase were without collusion, the purchaser is not entitled to relief, because the sale was made contrary to the intention of the testator, who gave the power of sale. *Reid* v. *Shergold*, 10 *Ves.* 381; *Cockerell* v. *Cholmeley*, 1 *Russ & My.* 418.

7. Henry C. Kock has no equity against complainants. He had constructive notice by the record. He is charged with actual notice, and makes no sufficient denial. *Story's Eq. Pl.*, § 806; 1 *Story's Eq. Jur.*, § 400–410.

8. As to the personalty. The executors of Mrs. Rattoone are responsible, at least for what they admit came to her hands —$3140.

She cannot say that was no more than her share. Having accepted the trust, she cannot abandon to others all duty, and simply take care of herself. This would be gaining advantage by her own wrong.

9. Is not the estate of Mrs. Rattoone liable for deficiencies on general principles ?

Letters testamentary of A. Beach are dated October 2d, 1828. All the executors filed the inventory—acting jointly, swearing jointly.

What did not Mrs. Rattoone receive ? Was it not her duty to see that Mr. Lawrence, if he took the bulk of the property, did *his* duty ?

Ought she not to have seen to the sale of ths northwest part of the farm, and the proper disposition of the proceeds ? 2 *Williams on Ex'rs*, (*5th Am. ed.,*) 1656 *; Styles* v. *Guy*, 1 *Mac. & G.* 422, 433 *; Williams* v. *Nixon*, 2 *Beav.* 475 *; Booth* v. *Booth*, 1 *Beav.* 125 *; Lincoln* v. *Wright*, 4 *Beav.* 427.

*Mr. P. D. Vroom*, for defendants, Wells and wife, and Kock.

*Mr. Leupp*, for defendants, executors of Rattoone.

THE CHANCELLOR.

The bill in this case was exhibited by Georgiana Booraem, Sarah Smedes, and William Lyell, three legatees under the will of Abraham Beach, deceased. It asked for an account of his estate from the defendant Cornelia B. Lawrence, the surviving executrix, and the defendants Wells and Leupp, the executors of Hannah Rattoone, deceased, one of the executors of the will. It also sought to set aside a sale made by Cornelia B. Lawrence as executrix, of the real estate of Beach, now held in part by Thomas L. Wells, as trustee for his

wife, Julia Wells, and in part by the defendant Henry C. Kock, who had mortgaged it to the defendant Smock.

Abraham Beach, by his last will, dated April 12th, 1823, devised all his estate, real and personal, to his executors, in trust for the purposes of his will.

He gave the part of his farm northeast of the turnpike road, by which it was intersected, with the personal property upon it, for the use, residence, and support of his daughter, Hannah Rattoone, and his son, Evert, so long as they should remain single; and gave the sole direction and management of it to his daughter Hannah. After the decease of Evert, he directed his executors to sell that land and personal property, and to pay to Hannah Rattoone, Cornelia B. Lawrence, and Maria Carter, his three daughters, each one-fourth of the proceeds; the remaining fourth he gave to the seven children of his deceased daughter, Ann C. Lyell, to wit, Abraham, Georgiana, Thomas, John, Ann, Sarah, and William, the same to be invested by his executors, and compounded, until the youngest, which was William, should be twenty-one, and then to be paid to such as might then be living.

The residue of his farm, southwest of the turnpike road, he requested his executors to sell as soon after his death as might be convenient, and disposed of the proceeds in the same manner. His sons-in-law, Isaac Lawrence and Abiel Carter, and Hannah Rattoone, were appointed executors.

By the first codicil, dated December 22d, 1823, he directed if Hannah should die before Evert, that the property given to them for their support should be *managed* by the executors for the support of Evert, during his life, and the surplus income should pass into the residue of his estate. He also appointed his daughter, Cornelia Lawrence, a co-executrix, giving to them full power to sell and convey his real estate, as in his will was already given.

By a second codicil, dated May 23d, 1825, reciting that he had directed his lands northeast of the road to be sold on the death of Evert, he altered these directions for a sale on

that event, *so far* as to leave it in the election of Hannah to have the same *then sold*, or to occupy the same for her life. He also appointed Maria Carter co-executrix of his will, giving to the executors full power to sell and convey his real estate *according to the directions and for the purposes in his said will* and codicils.

By a third codicil, dated November 16th, 1827, reciting the death of his daughter, Maria Carter, he gave her fourth of the proceeds of the sale of his lands to her three children, and directed that in the event of Evert surviving Hannah, his executors should rent out the house and lands annexed to it, or make such other arrangement in regard to the same as they might deem expedient, providing, however, for the comfortable support of Evert *on the same.*

The testator died in 1828, and his will and codicils were proved October 28th of that year, and probate granted to Isaac Lawrence, Cornelia B. Lawrence, and Hannah Rattoone. Isaac Lawrence died in 1841, and Hannah Rattoone in 1848.

William Lyell became of age in 1840, before which his sister Ann had died. John H. Lyell conveyed his interest in the property to Isaac Lawrence, and Abraham Lyell conveyed his interest to Georgiana Booraem, in 1825. Thomas Lyell died intestate, and without issue, after William became of age, but when does not appear. He left a widow, Jane B. Lyell, to whom administration of his estate was granted, in the city of New York, where he resided at his death.

In 1848, Hannah Rattoone died, having by her will devised her interest in this property to the defendant, Julia B. L. Wells. Evert survived her, and is a defendant in this suit. In 1853, the executors conveyed to the Raritan and Delaware Canal Company, which had constructed a canal across the farm northeast of the road, the land occupied by the canal. After the death of Mrs. Rattoone an arrangement was made by some members of the family with the defendant, Julia Wells, that if the whole farm should be conveyed to her husband, to be held in trust for her and her children,

she would assume the care, support, and maintenance of Evert upon the same, as directed by the will of Abraham Beach. She had lived upon it with her aunt, Mrs. Rattoone, and in pursuance of this arrangement returned to the farm in the spring of 1849, having left in 1848, upon the death Mrs. Rattoone. In July, 1849, the whole farm was sold at auction to William B. Lawrence, a grandson of the surviving executrix, for $6000. The sale had been properly advertised, was held at Somerville, some miles distant, and was attended by several persons, but no one bid except the purchaser. At that time, the complainants and their brothers, Abraham and Thomas—if Thomas was still living—were entitled to five-sixths of one-fourth of the proceeds of the property ; Cornelia B. Lawrence was entitled to one-fourth; Julia Wells to one-fourth; William B. Lawrence was entitled to the fourth given to the children of Maria Carter, who had, in May and June, 1849, conveyed their interest to him. It does not appear to whom the one-twenty-fourth assigned by John Lyell to Isaac Lawrence then belonged.

The sale was made subject to the trusts and provisions in the will of Abraham Beach, in favor of Evert, which provision was inserted in the deed, which also excepted the part before conveyed to the canal company. This deed was dated July 23d, 1849, and was for the consideration of $6000. William B. Lawrence, by deed dated July 24th, 1849, conveyed to Thomas L. Wells, the whole farm except the fifty-seven acre tract afterwards conveyed to Cornelia B. Lawrence. The consideration of this deed was one dollar. No proviso for the support of Evert was inserted, and it was in trust for Julia, the wife of the grantee, during her life, and at her death, in trust to convey to such of her issue as she should appoint, and failing such appointment, to all her surviving issue.

William B. Lawrence, by deed dated December 24th, 1849, conveyed the fifty-seven acre tract, which was southwest of the turnpike, to Cornelia B. Lawrence. The consideration was $1500. The first two deeds were acknowledged

on the 9th of January, 1850, after the date of the deed to Cornelia B. Lawrence, which was acknowledged April 29th, 1850. No consideration was paid by W. B. Lawrence for the conveyance to him, and none by Wells or his wife for the conveyance to her; nor was any agreement or stipulation made, except the proviso in the deed to W. B. Lawrence, for the support of Evert on the farm.

The fifty-seven acre tract, conveyed to Cornelia B. Lawrence, was for the price of $1500, being one-fourth part of the $6000, the price of the whole, and may be presumed to be in payment of her share. The purchaser, William B. Lawrence, was entitled to one-fourth, and one-fourth belonged to Mrs. Wells, to whom the residue of the farm was conveyed for one dollar. All parties interested, except the complainants and those whom they represent, received compensation, or took part in the proceedings of sale. They alone took no part in it, and received none of the property or proceeds of sale. Cornelia B. Lawrence conveyed her fifty-seven acre tract to the defendant Kock, who mortgaged it to Smock, another defendant.

The bill charges that the sale of the part northeast of the turnpike was void, because the executors had no power to sell until after the death of Evert, and that the sale of the whole was void, because it was not a real *bona fide* sale, but a scheme got up between the parties to it to transfer part of the property to Cornelia B. Lawrence who could not purchase at her own sale, and to transfer the residue to her daughter, for a nominal consideration, and to defraud the complainants out of their rights. The bill prays that the sale to William B. Lawrence may be set aside and declared void, that the surviving executrix may be removed as trustee, and a new one appointed to sell the property as directed by the will.

Three answers were filed—one by Wells and wife, one by the executors of Hannah Rattoone, and one by Kock. They deny actual fraud in the sale, or that the sale was made to vest title to any part in the executrix, and say that the sale

to her was an after thought, not contemplated at the time of the sale by her; that they believe the price of $6000 was the full fair value of said lands. They state that Wells and  have entered upon said lands, and expended large sums of money in the improvement of the same, and have maintained Evert upon the same; that the defendant Kock is a fair *bona fide* purchaser, for a valuable consideration, without notice of the facts from which fraud is attempted to be inferred, and that the complainants, by their silence after knowledge of the sale, acquiesced in the same, and are bound by that acquiescence. The answer of the executors of Rattoone objects to the bill for want of proper parties; alleging that the canal company, John H. Lyell, as heir of Thomas, and the children of Julia Wells, are necessary parties.

The bill was filed February 26th, 1857, seven years and a half after the sale, and six years after the acknowledgment of the deeds—how long after the sale came to the complainants' knowledge, does not appear. The time is not sufficient, under these circumstances, to bar the complainants by acquiescence, even if acquiescence by inaction merely, could in any case, be held to confirm a transaction founded on actual or constructive fraud, in favor of the participators in that fraud. *Lewin on Trusts* [*641.]

The objection for want of proper parties was taken by the answer of Rattoone's executors only. The only relief sought against them was an account of moneys received, or that should have been received. On the argument, counsel on both sides stated that these accounts were disposed of by agreement, and no question as to them remained in the present suit. Therefore, the objection, so far as depends upon their answer, does not now exist.

But the court, at the hearing, may object for want of proper parties, provided full justice cannot be done in the matter in question without such parties being brought in.

First, as to the canal company: they are not proper parties to a suit for the relief here sought, which is to set aside the sale of July, 1849. The conveyance to the canal com-

pany may be good; if that is illegal and fraudulent, it would have made the bill multifarious to have joined that matter in it.

As to John H. Lyell, his interest depends upon the question whether his .conveyance to Isaac Lawrence was before the death of Thomas; if it was, John has no interest. The fact which would make him a necessary party is not alleged, and cannot be presumed for that purpose.

The interest of the children of Julia Wells is too contingent and remote to make them necessary parties; none of them may survive her; she may make an appointment in favor of a grandchild, or a child yet unborn. Their interest is almost as uncertain as that of the heir of a tenant-in-fee.

The first question is, as to the sale of the part of the farm northeast of the road, on which the dwelling-house and principal improvements are. The only power of sale is derived from the will, which, in giving the power, expressly directs that it shall be after the death of Evert. It is well settled, that a power to sell must be strictly executed in regard to time, as well as all other particulars, when express directions are given. 4 *Kent's Com.* 333–4; *Co. Lit.* 113; 1 *Sug. on Powers* 334; *Cox* v. *Day*, 13 *East.* 118; *Wright* v. *Wakeford*, 17 *Ves.* 454; *Blacklow* v. *Laws*, 2 *Hare* 40; *Richardson* v. *Sharpe*, 29 *Barb.* 222; *Egerton's Adm'r* v. *Conklin*, 25 *Wend.* 224.

It is contended that the provision in the third codicil, which directs the executors, "in the event of Evert surviving Hannah, to rent out the house and lands annexed to it, or to make such other arrangement as they might deem expedient, providing for the support of Evert on the same," gives a power of sale, by implication. I do not think this provision by itself could be construed as giving a power to sell, by implication. The words do not import it of themselves, and the connection in which they are placed, with a power to rent out the place, would show that the testator did not mean to extend these words beyond their usual import, to a power to sell. .Besides, this construction is forbid-

den by the provisions of the whole will taken together, and the object of the testator as declared. These premises were intended as a home for Evert, an imbecile child. The express directions are, to sell after his death; he gives Hannah the election, if Evert dies before her, to postpone the sale until her death; and in each case of appointing new executors, he confers the power to sell expressly according to the directions in his will. These clearly show that he intended by the *other arrangements*, directed in the third codicil, arrangements consistent with those intentions, which were to devote these premises to Evert's support and that of Hannah, if she so elected, while they lived, and at their death to distribute it to the complainants and others; and the directions to rent and arrange must be taken to be of the life estate so given. The requiring a provision in these arrangements, for Evert's comfortable support *on the same*, shows that he did not intend a sale of the fee.

I am of opinion that the will or codicils did not give to the executrix power to sell the premises northeast of the road during Evert's life, and that the conveyance of them by Cornelia B. Lawrence to W. B. Lawrence is void, and must be so declared, as against these complainants.

As regards the residue of the farm southwest of the road, the executrix had power to sell it. The only question raised is, as to the legality of the sale made. It is charged that the sale was a contrivance to vest the property in the executrix herself and her daughter, without adequate consideration.

It is well settled, that a purchase by an executrix, trustee, or any other person interested, with power to sell, at a sale made by them, either directly or indirectly, will, in all cases, absolutely be set aside upon application of the parties interested in the property. *Davoue* v. *Fanning*, 2 *Johns. C. R.* 252; *Michoud* v. *Girod*, 4 *How.* 552; *Scott* v. *Gamble*, 1 *Stockt.* 218; *Mulford* v. *Bowen*, *Ibid.* 797; *Obert* v. *Obert*, 1 *Beas.* 423; *Huston* v. *Cassedy*, 2 *Beas.* 228; *Ex parte Bennett*, 10 *Ves.* 381.

The facts in the case might justify an inference that the

VOL. IV.                    I

sale was made with the intention of giving to Mrs. Lawrence the title to the fifty-seven acre tract. But the cause is heard on bill and answer only; in which case the statute directs that "the answer shall be taken as true in all points." The answers in this case expressly deny that the sale was made with that object, and state that the conveyance of the tract to her was an after-thought, induced by an alteration in her intention. This may be true consistently with the facts from which the contrary might be fairly inferred, and, therefore, by force of the statute, must control the decision on that point, without balancing probabilities.

But it is alleged that the sale was not an actual sale, so far as the interest of the complainants were concerned, but a mere contrivance to invest the title in Wells, no consideration being paid, or intended to be paid, for their share of the property.

By the answer of Wells and wife, it appears that the arrangement was, that she would support Evert for his life, if the whole property should be conveyed to her husband, in trust for her and her children; and by this sale and these conveyances, that arrangement was attempted to be carried out, and a title in fee vested. The whole manner of conducting the sale shows that it was conducted so as to carry out that arrangement, and to prevent others from bidding, and that the object was to get title to the interest of the complainants, all the others concurring, apparently, in the sale. The complainants, though of age, were not consulted; the property was sold at a distance from the premises; the whole put up in one parcel, both the part which there was power to sell, and that which could not be sold. It was sold, subject to the trusts and provisions in favor of Evert as to the part northeast of the road.

The sale and conveyance were without any consideration actually paid; this must be taken as true, for the bill so charges, and the answer does not deny it. The executrix may have received her share of the consideration in the conveyance of the fifty-seven acre tract, but she received none

as trustee for the complainants. Wells and wife paid no consideration; the deed to him as trustee, states the nominal consideration of $1. He entered into no covenants or agreement to support Evert; his wife could enter into none; none are set up. The northeast tract was conveyed subject to the provisions in favor of Evert, but the southwest tract was free from any encumbrance, and was conveyed to W. B. Lawrence, and by him to Wells, without any consideration. Had a stipulation to support Evert been entered into, it would have been no consideration, so far as the complainants are concerned; they were not bound to support him, and the testator had given them a share of this southwest tract, free from his support. It is clear, that Wells and his wife took the conveyance of this property, knowing that no consideration was paid, or intended to be paid, to the complainants, and that the sale was an attempt to appropriate the property of the complainants to the support of Evert; the only consideration for this share which they claim to have given, was that unlawful appropriation. The share of these complainants should have been paid to them immediately after the sale. Their claim has been neglected and resisted, and they are put to this suit to obtain it. A person taking a conveyance from a trustee or executor, made in breach of trust, without any consideration, has no right to turn over the *cestui que trust* to his action against the trustee, who may have made himself liable. The trustee may be out of the jurisdiction of the court, insolvent, or have died without representatives.

That the tract was sold in one lump with the northeast part, which the executors had no power to sell, would not, of itself, be such evidence of fraud as, at this distance of time, would set aside the sale, if the consideration was sufficient, and if the consideration for this tract could be distinguished and ascertained. It was sold with the other, and there is nothing in the pleadings to show the quantity in either tract, or their relative value.

The deed of the executrix was good to convey the north-

east tract for the life of Evert. The executors had power to make such arrangement during his life interest in the tract, and as it appears that the yearly value of the same was not equal to his support, it might be inferred that, as subject to the condition, it was of no value. The whole price of $6000 was paid for the southwest part. There are two objections to this: one, that the purchasers might have supposed that they bought the fee simple of the house lot; the other, that it does not sufficiently appear that $6000 was the full value of the southwest tract. The sale can fix no value; as an auction, it had no reality, and the price of $6000 was not fixed upon by vendor or purchaser as the actual value to be received by the one or paid by the other.

Kock was a purchaser for valuable consideration, without notice of any facts from which fraud could be inferred. He must be held to know the contents of the will and of the deeds through which he claims title. There is nothing in either of these, to give notice or raise suspicion of any of the facts on which the sale of the southwest tract can be set aside. The only wrong in this, was the sale of the house tract in fee, when the only power was to sell or dispose of it for Evert's life. He was not bound to inquire into, or know the law as to the title of an adjoining tract, although conveyed by the same deed. And, even knowing the law, he might infer that the purchasers were willing to pay the price for a life estate, which only would be conveyed by the deed. As the executor had power to sell his parcel, the bill must be dismissed, as against Kock and his mortgagee. *Jackson* v. *Henry,* 10 *Johns. R.* 197.

The fifty-seven acre tract must be taken as satisfaction of the share of Cornelia B. Lawrence, at least as against her; she sold the whole, and accepted the deed for it as her share. If it was in excess of her share, she may be called upon to account. The complainants will be entitled to five-sixths of one-third of the residue of the southwest tract.

As the executrix had power to convey the southwest tract, and the deed is not void, but voidable only, and as the de-

fendants, Wells and wife, have title to thirteen-eighteenths of it, and have no doubt cultivated and improved it as one own, and the only right which the complainants have is to have five-eighteenths of the value, a reference must be made to a master, to inquire of the value of that tract. In making this inquiry, he will be guided by the rule governing in partition, which gives to any tenant-in-common any improvements or erections made by him in good faith, by requiring the part on which they were made to be set off to him, without computing their value. The value of buildings or new erections of any kind, placed upon the land by Wells and his wife, must not be computed; but buildings, or fences, or other improvements, made more valuable by repairs, and the additional value given to the land by rise of prices or improved cultivation, must be included.

In addition to this, the complainants are entitled in this suit, to receive from the defendants, Wells and wife, their share of the amount of the annual value of this land from 1849 until now, which value must be inquired into and reported upon.

It is more questionable whether the northeast tract ought not, after Evert's death, to be sold by a new trustee, to be appointed for the purpose. The deed as to that, was inoperative beyond the life of Evert, and the title of Wells may not be made valid by accounting to the complainants for the value of their share. Many of the reasons for directing an account as to the southwest tract, exist here. But it is not necessary to determine that question now. It was stated on the argument, that Cornelia B. Lawrence and Evert Beach had both died, pending the suit. No action can properly be had on this question, until a supplemental bill shall be filed, bringing these facts before the court, and it can then be considered whether it is better to order a re-sale, or to have the value of the complainants' share estimated and paid.