AUGUSTINE B. REPETTO et al.

*v.*

MARY C. BAYLOR, trustee, &c.

[Filed April 3d, 1901.]

1. Where a contract is sufficiently expressed in writing to satisfy the statute of frauds, and is of such character that performance of all its terms by both parties can be substantially directed, this court will not refuse to enforce it, because, at the stage when the court's aid is invoked, there has not been a partial performance by either party.

2. Where the contract of sale gives within certain defined limits, the right of selection of the lots to be conveyed to the proposed vendee, it is not for this reason incapable of being specifically performed. The rule *id certum est quod certum reddi potest* applies with regard to the selection of the lots.

3. Where the vendor in the contract sought to be enforced is a trustee, who, under the trust, has no power to make the contract, this court will not decree its performance.

On amended bill, motion to dismiss, &c.

*Mr. Clarence L. Cole,* for the complainants.

*Mr. John J. Crandall,* for the defendant.

GREY, V. C.

The original bill of complaint in this cause was filed specifically to enforce a contract, made by the defendant, Mary C.

Baylor, trustee, &c., by which she agreed to convey to Antonio Repetto a large number of lots of land "situate, &c., in Atlantic county."

The complainant Augustine Repetto is the assignee of Antonio Repetto, the proposed vendee named in the contract. The defendant is the vendor.

The bill was demurred to, and the demurrer was sustained—*first,* because, as the allegations of the bill were framed, the contract under which relief was sought did not designate the lands with sufficient certainty to satisfy the statute of frauds; *second,* because the bill alleged that Augustine Repetto, the complainant, selected certain lots, while the contract limited the choice to Antonio Repetto, the contracting vendee.

When the demurrer was sustained, the complainant amended his bill, stating the lands to be conveyed with certainty, and annexing a copy of the contract and map designating them. The defendant now moves to dismiss the amended bill, upon notice and reasons given under rule 213.

The effect of notice to strike out under that rule is the same as a demurrer to the bill for the causes noticed, the purpose of the rule being to provide a quick method of presenting a criticism of a pleading and determining its justice.

The first cause set up in criticism of the bill is that it states only a breach of an executory contract, and seeks its specific performance without showing that either party has done any act in whole or partial performance of it. Where the contract is sufficiently expressed, in writing, to satisfy the statute of frauds, and is of such a character that performance by both parties can be substantially directed of all its terms, this court will not refuse to enforce it because, at the stage when court's aid is invited, there has not been a partial performance by one party or the other. There are many cases within the letter of the statute of frauds in which there has been a partial performance by the party seeking relief in this court, and they are entertained here, because to refuse relief would promote, rather than defeat, the success of a fraud. There is, however, a well-defined equitable jurisdiction for enforcing the specific performance of contracts, irrespective of their partial performance. The

principle is elementary, and is recognized in all treatises upon equity jurisdiction. *Pom. Eq. Jur.* §§ *105, 108, 367, 368.*

The second objection to the bill of complaint is that the contract for the sale of the lands on which the suit is based does not define with sufficient certainty the lands agreed to be conveyed.

The contract (copy of which is annexed to the amended bill) shows that the defendant agreed to convey to Antonio Repetto all these one hundred and thirty-eight lots, &c., situate, &c.,

"the same to be chosen and designated by the said Repetto, and said lots to remain as now marked upon map made by Morris Hillman, and on file, &c., a copy whereof is now in possession of the said Repetto, and marked as aforesaid, provided the said Mary C. Baylor has not heretofore conveyed the same to other persons. Should the title to any of the said lots be in any other persons as above provided then said Repetto shall have the right to designate other lots in the same blocks, to take the place of such lots not owned by the said Mary C. Baylor. That the map in the possession of the said Repetto shall for the purpose of description of the said lots be considered and is hereby made a part hereof."

The bill alleges that at the time of making the contract, Antonio Repetto, by Mrs. Baylor's direction, marked on the map the one hundred and thirty-eight lots referred to in the contract; that subsequent investigation disclosed the fact that Mrs. Baylor had, prior to the date of the contract, conveyed several of the selected lots, and that Antonio Repetto thereupon chose other lots from the same blocks to make up the deficiency, and Mrs. Baylor was notified of the new selection.

On this motion the facts alleged in the bill of complaint must be taken to be true. It therefore appears that the one hundred and thirty-eight lots, which were originally the subject-matter of the contract, were, by the parties at the time of its making, selected, agreed upon and indicated on a map, a copy of which was in possession of Antonio Repetto, one of the contractors, which copy it was agreed should, for the purposes of description of the selected lots, be deemed to be a part of the contract. This was a sufficiently definite selection and designation of the lots agreed to be conveyed. The mere form in which the selection was expressed, whether by written out mention in the body of

the contract, or by marking on a map specified in the written contract to be a part of it, is of little significance. It is also insisted that there was no final agreement of the minds of the parties on the particular lots which should pass by the contract, because there was a right of future selection reserved only to Antonio Repetto, in case it should be found that Mrs. Baylor had sold any of the one hundred and thirty-eight lots originally chosen. Uncertainty of description of the subject-matter of the contract of sale is held to be avoided where the contract itself gives the right of choice to either party. *Fry Spec. Perf.* § *329. Id certum est quod certum reddi potest* applies with regard to the description of the subject-matter. *Ibid. 328.* Indeed, the argument here made in criticism of the contract was advanced and overthrown in *Jenkins* v. *Green, 27 Beav. 437,* where the contract was to demise a farm containing four hundred and thirty-seven acres, "except thirty-seven acres thereof;" there being neither specification of which thirty-seven acres were to be excepted, nor mention of which party should make the selection, Sir John Romilly, master of the rolls, held the contract to be enforceable specifically; that where the matter was presented before the lease was executed, the selection should be made by the lessor; if after the lease was made, then the right of selecting would rest in the lessee. In the contract and map exhibited in the amended bill it appears that certain ascertained lots were originally selected by both parties, and that there was an agreement of both that in case any of them had been previously sold, one party should choose an equal number from those indicated in the same blocks to take their places. Here was an exact designation of a number of lots, and an agreement whereby in case any selected could not be conveyed for want of title, one party only should choose enough other lots from defined limits to fill the number. The minds of the parties had come to a final agreement upon the subject-matter of the sale, the vendor agreeing, in a named contingency, that the vendee should select what a part of it should be. Nothing remained to be done between them as negotiating contractors. It was always in the power of either to enforce the contract—the vendor by requiring payment of the price, the vendee by selecting the

Repetto *v.* Baylor.

number of lots necessary to supply the deficiency and requiring conveyance.

The third objection is that the lots selected in the place of those previously sold were not identified in the contract. This criticism is answered by the previous discussion, and the showing that the contract and map enabled the identity of the lots to be conveyed to be definitely ascertained, the vendor and vendee both agreeing that the vendee, to the extent and in the case named, should select them. There is no principle of law which prohibits such an agreement, where the items of property from which the selection is to be made are indicated with such accuracy that, by the selection, the portions to be conveyed can be made certain.

The fourth objection is that the lots Nos. 35, 37 and 39, in block 8, are not within any provisions of the contract, as by the statements of the bill no lots in block 8 were mentioned in the contract, and by the contract all lots not within the blocks originally marked are excluded from the contract.

This objection is a mistake of fact. The bill itself (page 3) mentions, as among the lots selected as the original one hundred and thirty-eight, "lots Nos. 1, 3, 5, 7, 9, 11, 13 and 15, in block 8." Those lots are also designated on the map annexed to the bill, and made part of the contract by reference. The statements of the bill show that Mrs. Baylor had previously conveyed from block 14 so many lots, that in that block there did not remain a sufficient number to make up the quantity which she agreed to convey to Repetto, and to make up this deficiency, lots Nos. 35, 37 and 39, of block 8, were selected by the latter. The provision for new selection allowed this to be done. It declared that

"should the title to any of the said lots be in other persons as above provided, then said Repetto shall have the right to designate other lots in the same blocks to take the place of such lots," &c.

The clause dealt with the lots as a class and with the blocks in the same way. If "any of said lots," not any lots in a certain block, should be owned by another than Mrs. Baylor, then Repetto might designate other lots in the same blocks, that is,

Repetto *v.* Baylor.

in those blocks named in the agreement, not necessarily in those blocks in which the non-owned lots were situate. Any other construction would operate to deprive the vendee of some of his total number of one hundred and thirty-eight, because if more than half of the lots in any one block were not owned by Mrs. Baylor, there would not be enough in the remaining half to make up the deficiency, and the vendee, not having recourse to any other block, would be unable to have one hundred and thirty-eight, his total number.

The fifth objection is that the trust set forth in the bill shows that if Mrs. Baylor, the trustee, made a sale, she must, under the terms of the trust, require payment in cash, while the contract set up and sought to be enforced in this suit, gives a credit of three years as to more than two-thirds of the purchase-money. The terms of the trust relating to the power of sale, as stated in the bill, are "to grant and convey the said premises, or any part thereof, to any purchaser, for any price, and execute a good and sufficient conveyance in the law for the same, and to receive the purchase-price therefor, without liability." &c., of the purchaser.

If, by the terms of this trust, the trustee had no power to make the contract here set up, so that its enforcement would amount to a breach of the trust, this court will make no decree compelling its performance. *Lew. Trusts* \*423. The words of the trust authorize the trustee to convey, for any price, and to receive the same, but do not give to her any power to arrange terms of postponed payment of that price, or to accept a mortgage or anything else than money in satisfaction of it. This is a matter of substance, for a sale upon credit postpones the payment of the price, and subjects the trust to the possibility of loss by reason of depreciation of the value of the mortgaged premises. A trustee cannot make contracts in excess of the power given him by the terms of his trust. *Oceanic Steam Navigation Co.* v. *Sutherberry, 16 Ch. Div. 236.*

The principle is akin to the declaration of the courts that a power to sell merely does not confer the power to mortgage. *Haldenby* v. *Spofforth, 1 Beav. 394; Page* v. *Cooper, 16 Beav. 396; Ferry* v. *Laible, 4 Stew. Eq. 575.* This last case was re-

versed on an appeal, but upon other grounds than the principle here stated. This rule has been relaxed where the settlor's purpose, as expressed in the trust, is to sell to raise some named fund which he has charged on the estate (Lord St. Leonards, in *Stroughill* v. *Anstey, 1 De G. M. & G. 645*); or where it can be better answered by a mortgage than by a sale, and a mortgage is not contrary to his intent (*Loebenthal* v. *Raleigh, 9 Stew. Eq. 169*); or where a mortgage to raise funds for repairs was necessary to save the estate. *Schulting* v. *Schulting, 14 Stew. Eq. 131.*

In the case in hand the power given to Mrs. Baylor, it must be noted, is to sell for a price, and contemplates a final disposal, once for all, of the property in consideration of a price to be received. There is neither in the recital of the trust deed, nor in the bill of complaint, a showing that the purposes of the trust require that a credit, secured by mortgage, payable years after the sale, should be given, nor does it appear that the safety of the estate compels a sale on such a credit. The expressions of the trust indicate the settlor's purpose, finally, to dispose of the lands, out and out. They consist of outlying sand-beach lots, a class of property well known to be variable in value. The settler may have had in view the dangers which might arise from the giving of an extended credit because of the possible depreciation of these trust lands, and may, for this reason, have omitted to give to the trustee a power to arrange terms of credit for the purchase-money. Whether this was contemplated or not, the power to give a credit is neither expressed, nor, necessarily, to be implied from the terms of this trust, and no more authority can be ascribed to the trustee than is within one or the other of these categories.

This being the situation of the trustee, this court is now asked to compel her to perform a contract to extend credit, which the deed, under which she holds, does not authorize her to do. Nothing has been paid, no possession has been given, and no one appears to have changed position in any particular; the whole matter is purely executory. In a case where large expenditures had been made on the strength of an agreement entered into by a trustee in excess of his authority, Vice-Chan-

cellor Little, of the duchy of Lancaster, refused to compel performance, and on appeal the master of the rolls and the lord justices of appeal unanimously sustained his judgment. *Oceanic Steam Navigation Co.* v. *Sutherberry, ubi supra.* Sir John Leach, in *Evans* v. *Jackson, 8 Sim. \*217,* refused to decree a specific performance where the agreement of the trustee was in excess of the power.

For this reason the complainant's contract of sale cannot be decreed to be specifically performed, and the defendant's objection to the bill of complaint must be sustained.

I will advise a decree accordingly.