This is a suit for specific performance. On November 5th, 1924, defendant Ann Isabel Martin, individually and as sole executrix and trustee under the last will and testament of Frances Martin, deceased, together with Joseph Henry Martin *Page 124 
and Addie E. Martin, his wife, and Georgianna Manley, the other defendants in this suit, entered into a written contract with The Trans-Hudson Realty Company, Incorporated, whereby they, for the consideration therein stated, agreed to convey to the latter the lands and premises therein described, and here referred to as the Opera House property, on February 15th, 1928. By various mesne assignments, the contract in question was assigned to the present complainant, which, by its bill, seeks the specific performance thereof or so much thereof as the defendants may be able to perform, with an abatement, however, by way of compensation for any interest which Dorothy Manley — the infant daughter of defendant, Georgianna Manley, and who is not a party to the said contract or the present suit — may have in the said property.
The property in question was originally owned by Frances Martin, the mother of the defendants, who, on February 9th, 1923, died seized thereof and left a last will and testament, the fourth clause of which reads as follows:
"I hereby give, devise and bequeath unto my executrix and trustee hereinafter named, the premises known as the Opera House property, together with the gore of land abutting the same, said Opera House together with said gore of land being bounded by Prospect and Oak streets, in the village of Ridgewood, county of Bergen, State of New Jersey, the same to be held in trust nevertheless for the uses and purposes hereinafter set forth, and I direct that the said property be held intact and not sold until five years has elapsed after my demise, and during the said five years the rents, income and profits thereof be paid over to my daughter, Ann Isabel Martin.
"That out of said rents, income and profits, my said daughter Ann Isabel Martin shall pay and discharge all charges against said Opera House property, namely, taxes and insurance, make such repairs as may be absolutely necessary to keep said Opera House tenantable, and further
"That she shall pay over to my daughter Georgianna Martin Manley, one hundred ($100) dollars each and every month, and I further direct that after making all of said payments, the balance remaining in her possession shall be applied to her own use;
"That at the expiration of said five years after my demise, or as soon thereafter as possible, my executrix and trustee shall sell the said Opera House property, and out of the proceeds of said sale, she shall pay over to my son, Joseph H. Martin, a three-sixths part of the moneys derived from said sale. *Page 125 
"I further direct that out of the proceeds of said sale that two-sixths part thereof be paid over to the executrix and trustee of this my last will and testament, to be hereinafter appointed to have and hold the same in trust nevertheless for the uses and benefit of my daughter Georgianna Martin Manley, and to invest and keep the same invested and to collect and receive the income thereof and to pay and apply the net income arising from said trust to the said Georgianna Martin Manley, during her natural life, and upon her death, the principal to the issue her surviving;
"The remaining one-sixth part thereof out of the sale of the said Opera House property, I give, devise and bequeath unto my daughter Ann Isabel Martin, to have and to hold unto herself forever."
It is by virtue of, in accordance with and subject to the foregoing provisions of said will that the defendant Ann Isabel Martin had acquired and holds the title to the lands and premises in question. The extent or limitation of her power to deal with this property is, of necessity, controlled by the declaration of the trust as therein set forth, and of which fact the vendee, through whom complainant holds by assignment, was fully aware of at the time of the making of said contract. By its provisions, she is specifically required to keep the property "intact and unsold" until five years shall have elapsed from the date of the testator's death, after which she was to sell it. Notwithstanding said provisions, the executrix and trustee, on November 5th, 1924, or less than two years after the testator's death, entered into the contract in question. Her action in so doing was contrary to and in violation of her duties and powers as expressed in said trust. That a power of sale must be strictly executed in respect to the time of its exercise, when express directions are given by the testator, is a principle of law now well settled. Booraem v. Wills, 19 N.J. Eq. 87; Hattie et al.
v. Gehin, 76 N.J. Eq. 340.
Complainant, however, contends that the testator, in directing that the property be held "intact and unsold" for five years after her death, merely sought to avoid its actual conveyance before the expiration of said time, and inasmuch as the contract in question required the deed to be delivered after the expiration of said period, the executrix and trustee *Page 126 
had the power to enter into it within said period. With this contention, I am unable to agree. To place upon the testator's clear and express directions the narrow, strained and unreasonable construction urged by complainant would be to defeat the very intent and purpose of the testator and to ignore her express directions.
Many considerations, such as the inexperience of the executrix and trustee, as well as that of the beneficiaries of the trust, the likelihood or probability of the property enhancing in value, the desire to insure the exercise of a more mature judgment as regards the value of the property on the part of the executrix and trustee in negotiating its sale, which would be gained as a result of her having managed and supervised it for a period of five years, may have entered the testator's mind and prompted and induced her to postpone the day of sale of said property for the period specified by her. It was to insure against the likelihood of the executrix and trustee assuming any valid obligations with reference to the sale of the property, or any interest therein before the prescribed period, that the testator, besides directing that the property be kept unsold, ordered it to be kept "intact" during said period. It is essential that such directions be faithfully and rigidly observed. The policy of the law is to construe a will or trust so as to make it conform to the intent of the testator or donor, and to require its execution as thus construed, where same is not illegal.
I am satisfied that the intent and purpose of the testator as manifested by the provisions of her will, above set forth, was to completely postpone and suspend the power of selling or in any wise dealing with said property, excepting only in respect to its renting and maintenance for five years after her death. Besides expressly directing that the property be unsold, she specifically enjoined her executrix and trustee to keep it "intact" during said period. Of the meaning of this clear and strong language, there can be no room for doubt. A valid contract for the sale of said property would give the vendee an interest therein, vest him with the equitable title *Page 127 
and ownership thereof, and unquestionably constitute an encumbrance thereon. Certainly such a situation would result in the property being kept in a condition other than "unsold and intact," as directed by testatrix, and thus in defeating her express directions.
Nor does it matter that three of the four beneficiaries of said trust have joined with the trustee and executrix in the execution of the contract in question. While the time of the exercise of a power of sale is a matter that may be waived by all of the parties interested in the trust (Armour v. Murray,74 N.J. Law 351), nevertheless no number less than all of said parties can legally do so. Isham v. Delaware, Lackawanna and WesternRailroad Co., 11 N.J. Eq. 227. Here, Dorothy Manley, an infant and one of the beneficiaries of the trust, did not join in nor consent to the execution of the contract under consideration, nor was such done on her behalf by any duly authorized person. Nor does it alter the situation that those beneficiaries, who joined in the execution of said contract, may, by their act in having done so, now be estopped from questioning the power or authority of the executrix and trustee in making it since such would not deprive this infant beneficiary from doing so.
Complainant, in the event of being unable to procure specific performance as to the whole of said property, seeks the specific performance of said contract as against the beneficiaries who joined in said contract, with an abatement of the purchase price by way of compensation for the outstanding interest of the said infant beneficiary, who is not even a party to this suit. For the court to so decree, would result in its compelling the executrix and trustee to sell the property other than as a whole or entirety, contrary to the intent and express directions of the testator. If such were done, the infant beneficiary, instead of receiving one-third of the proceeds of sale, subject to her mother's life interest therein, would become a co-owner of said property, to the extent of her interest with complainant. Thus her interest would be subjected to the risks and hazards of a forced sale in a partition *Page 128 
suit, if and when the complainant, or its successors in interest, so desired. Such a state of affairs not only would be in violation of the trust as declared, but would be most inequitable indeed.
For the reasons stated, the complainant should be left to its remedy at law and a decree may be entered dismissing the bill of complaint.