## Yocum v. Citizens National Bank, Trustee

*Henderson & Henderson* and *Paul S. Lehman,* for plaintiff.

*A. Reed Hayes* and *Harold W. Houck,* for defendant.

UTTLEY, P. J., July 22, 1937.—This is a bill in equity filed by Robert C. Yocum, plaintiff, against Citizens National Bank of Lewistown, trustee in two deeds of trust in the nature of mortgages, one a first mortgage securing $15,000 of bonds and the other a second mortgage securing $60,000 in bonds, praying for the specific performance of an alleged public sale by the trustee, of the real estate described in said mortgages, clear of all encumbrances, on June 6, 1936, to Robert C. Yocum, plaintiff, for $12,500. The answer of defendant alleges, inter alia,

that the trustee was without authority, under the power of sale in said mortgages, to sell the real estate therein described clear of the taxes which were liens thereon at the time of the sale or to apply any of the proceeds of the sale to the payment of the taxes and denies that the sale was made clear of all encumbrances as alleged by plaintiff. To defendant's answer plaintiff has filed a replication putting the case at issue for final hearing.

The issues raised by the pleadings here are whether the real estate, described in plaintiff's bill, was actually sold clear of all encumbrances on June 6, 1936; whether the trustee had any authority, under the power of sale in the mortgages, to sell the real estate described therein, clear of all encumbrances; and whether, if the trustee had no such authority, under the power of sale in the mortgages, and the sale was made clear of all encumbrances, the trustee could be compelled in this proceeding to pay the taxes individually and execute and deliver, in its representative capacity as trustee, to Robert C. Yocum, plaintiff, a deed for the premises described in the mortgages clear of the taxes. . . .

## Discussion

Plaintiff alleges that, at the public sale of the premises described in his bill, by the trustee under the power of sale in the mortgages mentioned in the findings of fact, the auctioneer, in response to a question from plaintiff, as to what was to be done about the taxes, and after consultation with the attorney for the trustee in the mortgages, made the announcement that the sale was clear of all encumbrances; that, following this announcement, the property was sold to plaintiff for $12,500, and that he complied with the terms of sale by paying $3,750, on account of the purchase price, and with consent of the trustee entered into possession of the premises. The trustee defendant having denied that the sale was clear of all encumbrances and refused to pay the taxes or deduct the same from the purchase price, plaintiff has filed this bill

in equity for the specific performance of what he alleges was a valid sale by the trustee of the premises in question clear of taxes. The taxes, which were liens against the premises at the time of the sale, aggregate in principal amount $2,452.16. These taxes were not divested by the sale and continue as liens against the real estate sold: Commonwealth v. Keystone Graphite Co. et al., 257 Pa. 249; Bruckman Lumber Co., to use, v. Pittsburgh Ins. Co. et al., 307 Pa. 561. While the cases cited are those where the real estate was held for the payment of the taxes they are authority for the principle that, as a sale under the power in a mortgage is not a judicial sale, taxes are not thereby divested.

If, therefore, plaintiff is to obtain a decree of specific performance, it must be by virtue of the alleged announcement of the auctioneer and oral contract of the trustee that the sale was clear of all encumbrances. This raises the question whether the trustee had the power under the mortgages to make a sale divested of the lien of the taxes and pay the same out of the proceeds of the sale.

The sale in this case, as stated in the advertisement and handbills, was expressly made under the fifth section of the mortgages, which provided that the sale shall pass to the purchaser a title free and discharged from any and every of the trusts therein created without liability to see to the application of the purchase money and that the proceeds of sale, after deducting the expenses, including attorneys' and counsel fees and other expenses, as well as reasonable compensation for the trustee's service, shall be applied to the payment of the principal and accrued interest of the bonds secured by the mortgages. There is no mention in this section of taxes or any provision there or elsewhere in the mortgages that the taxes shall be divested by or paid out of the proceeds of the sale. The trustee was, therefore, without power under the mortgages to make a sale of the premises in question clear of the taxes.

Where the sale of real estate is had under the power in the mortgage the conditions and provisions for the execu-

tion of such sale must be strictly construed and complied with. The authority of the mortgagee or trustee is limited and defined by the instrument under which he acts and he has such powers only as are granted to him together with any that are necessarily incidental thereto: 19 R. C. L. 587, sec. 402. While the power of sale contained in a mortgage or trust deed is valid, and a sale thereunder may confer a good title unto the purchaser, the powers of the person foreclosing thereunder are limited and defined by the instrument under which he acts, and he has only such authority as is thus expressly conferred upon him, together with the incidental and implied powers that are necessarily included therein: 19 R. C. L. 592, sec. 407.

It has been held in Pennsylvania that a bona fide holder of coupons detached from bonds secured by a corporate mortgage, who is not a holder of the bonds themselves, was entitled to a preference in the proceeds of a foreclosure sale given to arrears of interest by a clause of the mortgage which provided that the net proceeds of a sale by the trustee under the mortgage should be applied " 'First, . . . toward payment to the holders of unpaid bonds . . . of all arrears of interest remaining unpaid on such bonds' ": Real Estate Trust Co. v. Pennsylvania Sugar Refining Co., 237 Pa. 311. In the opinion in the case cited the Supreme Court said:

"Though the appellants do not contend that the detached coupons held by the appellee are not to participate at all in the distribution here reviewed, such must be their fate if the appellants' construction of the seventh clause of article six in the mortgage is to prevail. *The three items of that clause provide where the proceeds of the sale are to go, and they cannot go elsewhere.*" (Italics supplied.)

There seems to be little doubt, therefore, that if the auctioneer with the approval of the trustee at the public sale of the premises under the mortgages in question did announce that the sale was to be clear of all encumbrances,

such action by the trustee was not authorized by the power of sale in the mortgages and was, therefore, ultra vires.

Plaintiff in answer to the foregoing takes the position that even if the trustee had no power under the mortgages to sell the real estate divested of the taxes and pay the same out of the proceeds of sale, nevertheless, if the announcement was made by the auctioneer as alleged, the trustee is individually liable therefor, and the court should make a decree of specific performance here directing the trustee individually to pay these taxes and in its representative capacity to deliver to plaintiff a deed divested of the lien thereof. This reasoning assumes that defendant individually is a party to this proceeding, when as a matter of record it is before the court only in its representative capacity as trustee. A court of equity here could grant a decree for specific performance only of a contract which the trustee had the authority to make under the power of sale in these mortgages and only against the trustee in its representative capacity. For any acts or contracts done or made by the trustee beyond its powers under the mortgages, particularly when there is no allegation or evidence of bad faith or wilful misrepresentation on its part, equity will leave plaintiff to his remedy by action at law for damages.

Counsel for plaintiff have not cited any authorities in support of their position that the trustee, under the facts and circumstances alleged by plaintiff, could be held individually liable in this proceeding for the taxes which were liens upon the premises in question at the time of the sale, nor has the court been able to find any Pennsylvania authorities as to the individual liability of the trustee in a mortgage under the circumstances here alleged. There are, however, some authorities from other jurisdictions upon this question which are entitled to respect. In the English case of Wedgwood v. Adams, 8 Beav. 103, 50 Eng. Repr. 41, it was held that, where trustees bound themselves to exonerate the purchasers of real estate as to encumbrances, specific performance will not be granted

when great hardship would be imposed. The agreement having been made in a representative capacity, equity would leave the purchaser to his remedy by action for damages. So also in Repetto et al. v. Baylor, Trustee, etc., 61 N. J. Eq. 501, 48 Atl. 774, where the vendor in the contract sought to be enforced is a trustee, who under the trust has no power to make the contract, a court of equity will not decree specific performance; in the above case the court cites with approval Oceanic Steam Navigation Co. v. Sutherberry, 16 Ch. Div. 236, in which Vice Chancellor Little of the Duchy of Lancaster, where large expenditures had been made on the strength of an agreement entered into by a trustee in excess of his authority, refused to compel performance, and on appeal the Master of the Rolls and Lord Justices of Appeal unanimously sustained his judgment. Again in Cassell v. Ross et al., 33 Ill. 244, it was held that where a deed of trust given to secure a debt confers the power upon the trustee, in the event of nonpayment, to sell the premises for cash, the trustee cannot sell upon credit, and if he does so a court of chancery will set aside the sale at the instance of the debtor.

It has been held also in Pennsylvania that if the purchaser at an orphans' court sale of real estate is misled by the declarations of the crier his remedy is to apply to the court to set the sale aside: Vandever v. Baker, 13 Pa. 120.

The nonliability clause in the sixteenth section of the mortgages would also have to be considered in determining the individual liability of the trustee even to a third party. The concluding sentence of the clause provides that the trustee shall not become liable or responsible for any cause, matter or thing, except the wilful and intentional breach of the trust expressed in the mortgages. It is common to insert such a clause in trust instruments and where the instrument is recorded and the person dealing with the trustee has actual and constructive notice of the existence of such a clause the trustee will be

protected from individual liability. It applies to contracts which are ultra vires as well as those that are intra vires and the only remedy in such a case would seem to be an action against a trustee individually.

There is evidence in this case that plaintiff had both actual and constructive notice of the limitations of the trustee's power of sale in the fifth section of the mortgages and the nonliability clause in the sixteenth section thereof. The mortgages were recorded, the notice of sale specifically referred to the section of the mortgages under which the same was to be held, giving the book and page where the mortgages were recorded, plaintiff with his counsel, before the sale was advertised, were in the office of the Recorder of Deeds for Mifflin County and examined the record of the mortgages and plaintiff admits that he knew on the day of the sale of the existence of taxes to the amount of $2,000, which were a lien upon the premises.

"It is a well settled rule that the doctrine of caveat emptor applies to foreclosure sales under a decree of court, or under a power contained in the mortgage or trust deed. The purchaser must examine the title, and not rely upon statements made by the officer conducting the sale as to its condition. If he buys without examination, he does so at his peril, and must suffer the loss occasioned by his neglect. Furthermore, the purchaser at a sale under a trust deed or mortgage with a power of sale, whether the mortgagee or a stranger, is conclusively charged with notice of irregularities by the trustee in executing the power of sale. He is bound to take notice that all the conditions upon which the trustee's power to act depends have been complied with": 19 R. C. L. 622, sec. 439.

"It is often said by the courts that a person dealing with one known to him to be a trustee is charged with knowledge of the extent of the powers of the trustee, or deals with the trustee at his peril. It is at least assuredly true that this third party is under a duty to inquire as to

the existence of these powers and is charged with such knowledge concerning the trustee's powers as he could have obtained by the making of a reasonable investigation. Where the trust is manifested by a written instrument, as is almost always the case with important trusts, surely reasonable investigation would include reading the trust instrument, and the third person would learn from such perusal that the proposed contract was ultra vires. In almost all cases there would seem to be no ground for an implied warranty of authority by the trustee": Bogert on Trusts and Trustees, 2152, 2153, sec. 724.

When one buys property from a trustee where the circumstances are such as to put a prudent man on inquiry as to the character of the property conveyed, a court of equity regards such circumstances as constituting constructive notice and imputes to the purchaser a knowledge of all facts that such inquiry would have revealed. Where he knows or is chargeable with knowledge of the nature of the estate it is his duty to go further and ascertain the nature and extent of the trustee's power: Byers v. The Union Trust Co., 175 Pa. 318; Kenworthy v. Levi, 214 Pa. 235, 238, 239; Kenworthy v. Equitable Trust Co., 218 Pa. 286, 290-91; Central Trust & Savings Co. et al., Trustees, v. Walters et ux., 314 Pa. 418-19; Norton v. Nebraska Loan & Trust Co. et al., 35 Neb. 466; Cassell v. Ross et al., supra.

Equity exercises its discretion in granting specific performance of a contract made by a trustee, as it does with other contracts. Nearly all the cases are concerned with contracts by a trustee to buy or sell land. If the contract made by the trustee is within his powers and fair in its terms, equity may well compel the trustee to execute his agreement. But if injustice to the cestuis is threatened, as where a trustee agrees to sell trust land for an inadequate price, the court is apt to decline to give a decree for specific performance. The attitude of the court toward enforcement of a contract made by the trustee, which in part binds him personally only and in part binds

him as a representative, is similar: Bogert on Trusts and Trustees, 2130, 2131, sec. 717.

A trustee sued for specific performance by a third person can set up the ultra vires character of his own act as a defense against the compulsory execution of the contract: Repetto et al. v. Baylor, Trustee, etc., supra; Oak Investment Corp. v. Martin, etc., 107 N. J. Eq. 123, 151 Atl. 874.

We therefore conclude, under the circumstances in this case, that, even assuming the auctioneer did state that the sale of the real estate in question was clear of all encumbrances, such sale was beyond the powers given to the trustee in the mortgages, and the trustee in this proceeding could not be held individually liable for and compelled to pay the taxes which are liens upon the real estate sold. The specific performance prayed for by plaintiff in his bill of equity will therefore have to be refused.

The above conclusion leaves only two possible dispositions of this case open to the court, one to set the sale aside and authorize a resale of the premises in question and the other to dismiss plaintiff's bill.

We are of the opinion that plaintiff did bid with the understanding that the taxes were to be divested. While we are unable to find as a matter of fact that the minds of the buyer and the seller met in an agreement that the real estate was to be sold clear of the taxes, we are satisfied that there was some misunderstanding as to this which led plaintiff to believe that he purchased clear of the taxes. Equity can and should therefore put the parties back as nearly as possible where they were at the time of the sale, and this can only be done by setting the sale aside and authorizing a resale of the property: Vandever v. Baker, supra. The claim of plaintiff that after he took possession of the premises he expended some money thereon should not enter into the decree here: Repetto et al. v. Baylor, Trustee, etc., supra. Plaintiff admits he knew of the trouble about the taxes two weeks after the

sale and these expenditures were made without authority from the trustee and at his own risk. There is no evidence that any permanent improvements were erected upon the premises or that there was any unjust enrichment of the trust estate. Also plaintiff is equally to blame for the situation here as he knew that these taxes were liens, had notice that the sale was to be made under the power of these mortgages, and not only had access thereto, but with his attorney examined the same. Furthermore, he has been in possession of the premises consisting of a tract of 600 acres or more with an 18 hole golf course, swimming pool, and clubhouse theron erected since June 6, 1936, the date of the sale. Giving due consideration to the rights of the bondholders under these mortgages as well as the equities of plaintiff, we are satisfied that it would be in accordance with the principles of equity, under plaintiff's prayer for general relief, to set this sale aside and direct the trustee to refund to plaintiff the amount paid by him upon the purchase money and authorize a resale of the property in question. . . .

## Decree nisi

Now, July 22, 1937, this case having come on to be heard on bill, answer, and replication, after full hearing and upon due consideration it is hereby ordered, adjudged, and decreed:

1. That the prayers, for specific performance in plaintiff's bill in equity, are hereby refused.

2. That the public sale, of the real estate described in plaintiff's bill in equity, by the Citizens National Bank, trustee in the mortgages of the Juniata Valley Realty Corporation, within mentioned, to Robert C. Yocum, plaintiff, on June 6, 1936, for the sum of $12,500, is hereby set aside; that the trustee above named return to Robert C. Yocum, plaintiff, the $3,750, in cash and bonds paid by him on account of the purchase price; and that the trustee is hereby authorized to resell said real estate under the provisions of said mortgages.

3. That the costs of this proceeding be paid by the trustee named in said mortgages out of the proceeds of the resale of said real estate.

### Opinion and decree

UTTLEY, P. J., February 19, 1938.—This is a rule to show cause why the final decree, setting aside the sale of the real estate and ordering defendant to return to plaintiff the amount paid on account of the purchase money, in the above case, should not be modified to permit defendant to deduct the taxes for the year 1937 from the amount of the purchase money ordered in said decree to be repaid to plaintiff.

The nisi decree in this case was filed July 22, 1937. No exceptions were filed by defendant thereto. Plaintiff withdrew his exceptions and the nisi decree became absolute October 11, 1937. No appeal was taken by either party from the final decree.

The object of the nisi decree in this case was to put the parties back, as nearly as possible, where they were at the time of the sale. While the taxes for the year 1937 were not in evidence on the final hearing, they were considered by the court, along with the facts that plaintiff had spent $1,500 on and had received no income from the premises after the sale, in arriving at what we considered an equitable disposition of the entire case. We have considered the argument and the authorities cited by counsel for defendant, but nothing therein has satisfied us that the 1937 taxes should be paid by plaintiff. The nisi decree has become final, no appeal has been taken therefrom and the entire matter is res adjudicata.

### Decree

Now, February 19, 1938, after due consideration, the rule to show cause why the final decree in the above-stated case should not be modified, as prayed for in defendant's petition, is hereby dismissed.